UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

OMAR F.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

———————————————————————

**DECISION AND ORDER**
21-CV-1214S

      1.      Plaintiff Omar F.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff filed his application for benefits under Title II of the Act on February 21, 2019. (R.[2] at 77, 85.) Plaintiff alleged disability beginning on April 19, 2018, due to back injury, blood clots, surgery on back, depression, vertigo, left knee, arthritis, back, knees, wrist, and right shoulder surgery. (R. at 69.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Stephan Bell held a hearing on June 17, 2020, at which Plaintiff, represented by his attorney, appeared and testified. (R. at 34-67.) Vocational expert Christine Ditrinco also testified at the hearing. At the time of the hearing, Plaintiff was 46 years old, with a high-

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

school education and past work experience as a firefighter, construction worker, line technician, sales attendant, and retail manager. (R. at 26, 267.)

3.      The ALJ considered the case <u>de novo</u> and, on June 30, 2020, issued a written decision denying Plaintiff's application for benefits. (R. at 15-28.) On October 14, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on November 12, 2021, challenging the Commissioner's final decision.[3]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 6, 7.) Plaintiff filed a response on May 13, 2022 (Docket No. 8), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the

---

[3] The ALJ's June 30, 2020, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.    "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.      Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.      The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of April 19, 2018. (R. at 17.)  At step two, the ALJ

found that Plaintiff has the severe impairments of spondylolisthesis and pars defect of the lumbar spine and status post fusion and history of deep vein thrombosis. (Id.)

11.     The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 20.)

12.     Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work except that he can:

> engage in lifting and carrying of 10 pounds occasionally and less than 10 pounds frequently and … engage in standing for 2-hours and walking for 2-hours. [He] can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance occasionally; stoop occasionally; kneel occasionally; crouch occasionally; and crawl occasionally. [He] can never work at unprotected heights, never around moving mechanical parts, and in vibration occasionally.

(Id.)

13.     At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 26.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 27.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 28.)

14.     Plaintiff makes several arguments for remand. First, Plaintiff argues that the ALJ disregarded relevant evidence of his mental health impairments. Next, Plaintiff argues that the ALJ did not adequately consider his blood clotting disorder and leg swelling in conjunction with Plaintiff's back problems. Connected to this argument, Plaintiff argues that the ALJ improperly assessed his credibility as to his need to elevate his legs. Plaintiff also argues that the ALJ erroneously borrowed the term "sedentary," as used in

the record, to find that Plaintiff could perform sedentary work, as defined by the Social Security regulations. Defendant argues that the ALJ's decision is supported by substantial evidence.

15.     Plaintiff suffered from back problems and deep vein thrombosis ("DVT"), both stemming from injuries he suffered while working as a firefighter.  On April 19, 2018, he injured his back while moving a fire victim. (R. at 169.) Subsequent X-rays showed a chronic pars defect at L5 and L4-5 disc herniation. (R. at 376.) A lumbar MRI showed mild facet hypertrophy at L3-L4, L2-L3, and L4-L5, with moderate disc protrusion. (R. at 378.) Physician's assistant Nicole Baumler performed regular physical examinations of Plaintiff to assess his ability to return to work as a firefighter.  She regularly noted that his extension and flexion were limited and filled out forms opined that he could do "no work," though she also stated "sedentary work permissible." (See, e.g., R. at 395, 393, 406.)

16.     Plaintiff underwent spinal fusion surgery with Dr. Franco Vigna on October 1, 2019. (R. at 740.) In preparation for his surgery, Plaintiff had to discontinue the anticoagulant Xarelto and have a vena cava[4] filter placed, to prevent blood clots. (R. at 454.) On November 19, 2019, Dr. Vigna noted that Plaintiff's back pain had dramatically improved, although he still had stiffness in his back and mildly limited range of motion (R at 792.)

17.     Plaintiff also experienced ongoing symptoms due to blood clotting issues. On November 30, 2016, Plaintiff was hit on the knee with a fire hose full of water. (R. at 491.) Thereafter, he developed acute deep vein thrombosis in his leg. (Id.) He was treated

---

[4] " The vena cava is a large vein that collects blood from either the upper or lower half of your body. It receives blood from several smaller veins. This is blood with the oxygen removed that the vena cava transports to the right side of the heart. Blockage or injury of a vena cava can have serious consequences for your health."  https://www.webmd.com/heart/vena-cava-what-to-know, accessed 1/27/2023 at 5:00 p.m.

with Lovenox and begun on Xarelto. (Id.) On July 23, 2018, he developed another clot. (R. at 401, 499, 809.) He was treated with Xarelto.

18.     On March 7, 2019, he presented with numbness going into his legs. (R at 461.) On June 18, 2019, imaging showed no evidence of DVT. (R. at 481.)

19.     On May 30, 2019, independent medical examiner Dr. Nikita Dave examined Plaintiff. (R. at 654-57.) In addition to finding Plaintiff limited as to bending, twisting, lifting and carrying due to his back problems, Dr. Dave opined that Plaintiff should "avoid sharp instruments, machinery, ladders, and heights due to anticoagulation status and vertigo." (R. at 657.)

20.     On August 5, 2019, Plaintiff saw Dr. Adam Kotowski, who recommended lifelong anticoagulant therapy and possibly a lifelong vena cava filter as well. (R. at 692.) Dr. Kotowski indicated that the filter might cause an increased risk of swelling and varicose veins. (Id.) Dr. Kotowski diagnosed Plaintiff with acute embolism and thrombosis in both legs. (Id.)

21.     Following his October 1, 2019, surgery, and the placement of the vena cava filter, Plaintiff experienced leg swelling. (R. at 314.) After surgery, he resumed Xarelto. (R. at 753.) On October 8, 2018, his primary care doctor, Dr. Howard Sperry, found that he could not return to work due to his lifetime Xarelto prescriptions. (R. at 538-39.)  There is no indication in the record that the vena cava filter was removed.

22.     On October 22, 2019, he presented at ECMC with back pain and left leg swelling. (R. at 773.) A doppler had come back negative for DVT, but he presented with abnormal gait and station, he was using a walker, and had limited range of motion in his lower back. (R. at 775.)

23.    On January 20, 2020, Dr. Adam Kotowski examined Plaintiff. He did not observe edema, but he noted varicose veins with the right leg slightly worse than the left. (R. at 813.) At a venous follow up on May 27, 2020, Dr. Kotowski observed post-phlebitic changes and that Plaintiff experienced "chronic leg heaviness." (R. at 830.)  He measured Plaintiff's calves and noted that the left leg, at 41 in, was more swollen than the right leg, at 39.5 in.  (R. at 827.)

24.    Plaintiff testified that he experienced leg swelling daily, that it felt like his legs would burst, and that he had to elevate his legs frequently. (R. at 45-47.) He testified that he could not wear his favorite sneakers due to the swelling; on questioning by the ALJ Plaintiff clarified that he could only wear them for a very brief period of time. (R. at 46.)

25.    The ALJ found that Plaintiff's "status post DVT" was a severe impairment, but he did not include any limitations related to Plaintiff's leg swelling in his RFC determination. Instead, he ALJ found that Plaintiff's testimony about his DVT-related limitations was not entirely credible. He noted Plaintiff's activities of daily living (cooking, cleaning, driving a car, self-care, socializing with family and friends, and walking). (R. at 22.) The ALJ found that Plaintiff's DVT issue was controlled by medications and compression stockings. (R. at 22.) The ALJ did not refer to Plaintiff's treatment by Dr. Kotowski or to Dr. Kotowski's observations of leg swelling. Rather, the ALJ cited Dr. Vigna's March 2019 note for the proposition that Plaintiff's DVT was under control, stating, "Dr. Vigna concluded the claimant's restrictions from the job of a firefighter were caused from his lumbar spine pathology and not due to whether he needed to use Xarelto for his deep vein thrombosis." (Id.)

26.     Regarding Plaintiff's clotting disorder, the ALJ noted Dr. Dave's limitations on sharps, but did not include a restriction as to sharps in his RFC. The ALJ explained that he found Dr. Dave's opinion only "somewhat persuasive given the claimant does not warrant a restriction from sharps," but did not explain why he found a sharp restriction unwarranted. (R. at 25.)

27.     Social Security regulations provide that statements of subjective pain alone cannot establish a disability by themselves. Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(a)). Instead, an evaluation of subjective complaints should reflect a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptoms. Id. Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]," weighing: (1) the claimant's daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms ...; and (7) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529 (c)(3)(i)-(viii), 416.92 9(c)(3)(i)-(vii).

28.     If the ALJ rejects a claimant's subjective testimony after considering the objective medical evidence and any other factors deemed relevant, the ALJ must explain

that decision "explicitly and with sufficient specificity that a reviewing court must be able to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the] decision is supported by substantial evidence." Gary C. v. Comm'r of Soc. Sec., No. 1:20-CV-01358-MJR, 2022 WL 3443834, at *4 (W.D.N.Y. Aug. 17, 2022) (citing Norman v. Astrue, 912 F. Supp. 2d 33, 43 (S.D.N.Y. 2012)).

29.     This Court finds the ALJ's opinion unsupported by substantial evidence because he did not clearly evaluate all the evidence of Plaintiff's leg swelling or explain his rejection of a limitation on sharps. The ALJ based his rejection of Plaintiff's testimony about his leg swelling, at least in part, on a confusing citation to the record. Contrary to the ALJ's implication, Dr. Vigna nowhere opined that Plaintiff's DVT did not limit his ability to work. Rather, Dr. Vigna stated, "whether or not he has a coagulopathy requiring Xarelto, he is temporarily and totally disabled from his job as a firefighter secondary to his lumbar spine." (R. at 444.) It appears that Dr. Vigna was not opining on the effect of Plaintiff's coagulopathy, but rather was opining on his area of expertise, Plaintiff's spine condition. Dr. Vigna's statement is not evidence supporting the proposition that Plaintiff's coagulopathy did not limit his ability to work. Additionally, the ALJ did not mention Plaintiff's treatment by Dr. Kotowski or Dr. Kotowski's clinical observations of leg swelling. Apart from the swelling issue, the ALJ also did not explain why he rejected consultative medical examiner Dr. Dave's restriction on sharps, given Plaintiff's lifelong need for anticoagulants.  While it is an ALJ's duty to resolve genuine conflicts in the evidence, Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002), here, the ALJ did not point to any evidence contradicting Dr. Dave's opinion regarding sharps.

30.     Because the ALJ did not explain his reasoning regarding Plaintiff's leg swelling and the implications of his anticoagulant therapy, this Court finds that his RFC determination is unsupported by substantial evidence. On remand, the ALJ shall consider these issues in assessing Plaintiff's RFC.

31.     Plaintiff also argues that ALJ disregarded relevant evidence of his mental health impairments and that the ALJ erroneously relied on the term "sedentary," as used in the record, to find that Plaintiff could perform sedentary work, as defined by the Social Security regulations. Because remand is warranted on another basis, this Court will not reach those arguments. The ALJ is free to consider them on remand as he deems appropriate.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:      February 9, 2023
            Buffalo, New York


                              s/William M. Skretny
                              WILLIAM M. SKRETNY
                              United States District Judge